UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CANAVERAL PORT AUTHORITY,

     Plaintiff,

v.                                   Case No: 6:17-cv-1079-Orl-40TBS

THE TUG PENOBSCOT,

     Defendant.

_____

## REPORT AND RECOMMENDATION

Pending before the Court is Plaintiff's Motion for Final Default Judgment (Doc 17). Pursuant to Local Rule 7.03(i), Plaintiff Canaveral Port Authority ("CPA") moves the Court to (1) enter a default judgment against Defendant, the tug PENOBSCOT (herein the "Vessel"), for failure to defend or to file any paper as required by law or to serve any response to CPA's verified complaint, (2) declare that the award to CPA is a first priority lien on the Vessel, (3) order that the Vessel be sold free and clear of all liens and encumbrances by the United States Marshal at an United States Marshal's auction and foreclosure sale, (4) declare that CPA may credit bid up to the amount of the judgment entered, and (5) order that if the Vessel is sold at the auction to a party other than CPA, then the proceeds of the sale shall be applied first to satisfy CPA's judgment in the amount of $146,537.76. Upon due consideration I respectfully recommend that the motion be **GRANTED, in part**.

## I. Background

On June 14, 2017, CPA filed its verified complaint to foreclose a maritime lien for necessaries on the Vessel, pursuant to Supplemental Admiralty Rule C and 46 U.S.C.

§31342 (Doc. 1). The Vessel is alleged to be owned by Victor Jattan (Doc. 1, ¶3, Doc. 8). CPA moved for issuance of warrant in rem (Doc. 2) and to appoint a substitute custodian (Doc. 3). Upon review of the allegations in its verified complaint, the arrest warrant was issued (Doc. 4) and, on June 30, 2017, Sophlex Enterprises, Inc. was appointed substitute custodian (Doc. 9).

On July 20, 2017, the United States Marshals Service arrested the Vessel and turned it over to the substitute custodian (Doc. 12). On July 26, 2017, copies of the notice of arrest and executed USM-285 were delivered via Federal Express and left at Mr. Jattan's residence door (Doc. 14, ¶ 8). In addition, CPA's attorneys sent correspondence to Mr. Jattan via certified U.S. Mail, return receipt requested (Doc.14, ¶ 9). CPA represents that the U.S. Postal Service was unable to deliver the July 31, 2017 correspondence to Mr. Jattan because no authorized recipient was available, but the Postal Service left a notice that delivery of the correspondence was attempted on August 4, 2017 (Doc. 14, ¶ 9).

Pursuant to Supplemental Rule C and Local Rule 7.03(d), notice of the arrest of the Vessel was published in Florida Today on August 4, 2017, and in the Orlando Sentinel on August 7, 2017 (Doc. 13).

Pursuant to Local Rule 7.03(f), the deadline for filing a claim was August 3, 2017. To date, no person or entity has filed a claim. Local Rule 7.03(f) established August 24, 2017 as the deadline for filing an answer to CPA's verified complaint. To date, no person or entity has filed an answer.

On August 31, 2017, the Court granted CPA's motion for the entry of a Clerk's default against the Vessel and default was entered (Docs 15, 16). This motion timely followed.

## II. Discussion

A district court may enter a default judgment against a properly served defendant who fails to defend or otherwise appear pursuant to Federal Rule of Civil Procedure 55(b)(2). In defaulting, a defendant "admit[s] the plaintiff's well-pleaded allegations of fact" for purposes of liability. Buchanan v. Bowman, 820 F.2d 359, 361 (11th Cir.1987). Nonetheless, a court may enter a default judgment only if the factual allegations of the complaint, which are assumed to be true, provide a sufficient legal basis for entry of a default judgment. Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.").

Once liability is established, the Court turns to the terms of the judgment. Pursuant to Federal Rule of Civil Procedure 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." If unspecified monetary damages are sought, the party moving for default judgment has the burden to prove the unliquidated sums in a hearing on damages or otherwise. FED. R. CIV. P. 55(b)(1)-(2). Thus, in order to enter a default judgment, the Court must find that an adequate showing has been made as to liability and the kind and amount of damages or other relief requested.

CPA has pled that it is the governing authority of Port Canaveral - a cruise, cargo, and naval port located in Brevard County, Florida (Doc. 1, ¶ 2). The Vessel (IMO No. 8842636) is a tugboat bearing Official Number 279653. She was built in 1959 and is currently owned by Victor Jattan. The Vessel is located at Port Canaveral's North Cargo Berth No. 4 (Id., ¶¶ 3-4). The Vessel was originally brought to Port Canaveral at an unknown time and obtained dockage from one of Port Canaveral's waterside tenants. In

October 2016, the Vessel was left at her dockage during Hurricane Matthew. During the hurricane, she broke loose from her dockage and drifted unmanned throughout the storm until she was secured at North Cargo Berth No. 4 on October 7, 2016, to prevent damage to the Vessel or other property. Since October 7, 2016, CPA has provided the Vessel with dockage at its North Cargo Berth No. 4 (Id., ¶¶ 7-10). Although requested to do so, Mr. Jattan has failed to remove the Vessel (Id., ¶¶ 11,12).

As part of its operation of Port Canaveral, CPA has the authority to impose charges and set forth rules and regulations for use of its waterways or its facilities. CPA's charges, rules, and regulations are set forth in its tariff (Doc. 1, ¶13). Despite demand for payment, the dockage and fees have not been paid (Id., ¶26). From October 7, 2016 through the date of the verified complaint, CPA has provided necessaries to the Vessel, including line handling and daily dockage charged per CPA's tariff (Id., ¶28).

By virtue of the default, these well pled allegations are deemed admitted and provide a basis for liability. Pursuant to the Federal Maritime Lien Act, "a person providing necessaries to a vessel" may assert a lien against the vessel and sue *in rem* to enforce the lien. 46 U.S.C. § 31342(a). The term "necessaries" is given "a broad meaning." J. Ray McDermott & Co. v. Off-Shore Menhaden Co., 262 F.2d 523, 525 (5th Cir.1959). By statute, necessaries include repairs and supplies. 46 U.S.C. § 31301(4). CPA has established that the services it provided fall within this broad definition.

As for the amount and kind of damages and other relief, the verified complaint seeks damages "including daily dockage, line handling fees, and a Harbormaster fee, plus prejudgment interest, costs and expenses" (Doc. 1 at 6). CPA alleges that "as of June 12, 2017, CPA's maritime lien totals $127,157.76, accruing additional daily dockage at the rate of $510 per day" (Id., ¶ 32). According to the Affidavit of Craig Langley,

General Counsel to CPA, subsequent to the filing of the verified complaint, CPA continued to provide necessaries to the Vessel, including daily dockage, at the rate of $510 per day (Doc. 17-1). The necessaries provided by CPA from June 13, 2017 through July 20, 2017 (the date of the Vessel arrest) amount to $19,380.00, for a total amount of $146,537.96 (Id.). Based upon the well-pled allegations and the uncontested affidavit, I find entry of default judgment in the total amount of $146,537.76 to be appropriate.

In addition to entry of a default judgment, CPA seeks a declaration that its judgment be a first priority lien. CPA argues: "Because no claims of maritime lien or preferred mortgage have been asserted in this action, the unpaid necessaries rendered to the tug PENOBSCOT by CPA constitute a preferred maritime lien on the tug PENOBSCOT pursuant to 46 U.S.C. §31342 and Supplemental Rule C, which is due and owing to CPA, and which has priority over all other claims." (Doc. 17 at 3). This statement is only partially correct. CPA has established that it is entitled to a maritime lien for provision of necessaries. And, it is true that no party has answered the verified complaint or filed a timely claim, making CPA's lien the first (and only) lien asserted. But, the Court appointed a substitute custodian and ordered that: "All expenses for the storage and safekeeping of the [Vessel] shall be deemed administrative expenses of the United States Marshal." (Doc. 9). It is well recognized that "claims for necessaries provided to a ship *after its arrest* 'are paid as expenses of justice *in priority to all lien claims* when the dictates of equity and good conscience so require.'" <u>Dresdner Bank AG v. M/V Olympia Voyager</u>, 465 F.3d 1267, 1272-73 (11th Cir.2006) (citations omitted and emphasis added).[1] Thus, while CPA's lien is of priority to all other *lien* claims, it does not have

---

[1] The pending motion seeks damages incurred by CPA up to the date of arrest and does not mention the amount of charges being incurred by the substitute custodian post-arrest. The substitute custodian agreed to act as such "for a sum to be billed at fair market value." <u>See</u> Doc. 8-2.

priority over all other "claims." Because the resolution of the claim of the substitute custodian is not at issue and CPA makes no exception for an award of these administrative expenses, I decline to make a recommendation that the sale of the Vessel be made free of all liens and encumbrances and that the proceeds of the sale be applied first to satisfy CPA's judgment.

To the extent the motion seeks an order directing the Marshal to conduct a sale, I recommend that it be granted pursuant to Rule E(9) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions and Local Admiralty Rule 7.05(q)-(r).

CPA requests that it be permitted to credit bid its judgment at the sale of the Vessel and I find this to be appropriate. See Schleef v. Sailing Vessel CLUELESS, No. 3:11-CV-650-J-32JBT, 2012 WL 2589237, at *7 (M.D. Fla. Apr. 26, 2012), *report and recommendation adopted,* No. 3:11-CV-650-J-32JBT, 2012 WL 2586221 (M.D. Fla. July 3, 2012), citing Bank of America v. Hoy, 2010 WL 5463103, at *3 (M.D.Fla. Dec.29, 2010) (allowing the plaintiff to credit bid its judgment at the sale of the vessel); Broward Marine Refit, LLC v. M/Y "Victory", 2009 WL 2422398, at *1 (S.D.Fla. Aug.6, 2009) (same). Accordingly, the motion should be granted to the extent CPA seeks to be allowed to credit bid the recommended judgment of $146,537.76 at the sale of the Vessel.

### III. Recommendation

Upon consideration of the foregoing, I respectfully recommend that:

(1) Default judgment be entered in the amount of $146,537.76 against *in rem* Defendant tug Penobscot;

(2) The U.S. Marshal be directed to conduct a sale of the tug Penobscot, her engines, tackle, apparel, furniture, equipment, appurtenances, and all other necessaries

thereunto appertaining and belonging to the vessel, in accordance with Rule E(9) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions and Local Admiralty Rule 7.05(q)–(r).

(3) Plaintiff be granted permission to credit bid its judgment at the public sale of the Vessel, and Plaintiff not be required to pay any cash or other payment unless and until its successful bid exceeds the total of its judgment against the Vessel.

(4) Any proceeds of the sale conducted by the U.S. Marshal be paid into the registry of the Court and, subject to the confirmation of the sale by the Court and upon motion by Plaintiff, the proceeds of the sale of the Vessel shall be applied to satisfy, fully or partially as the case may be, Plaintiff's Final Judgment after satisfaction of any outstanding *custodia legis* and U.S. Marshal's expenses of sale, according to the law.

## IV. Notice to Parties

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. <u>See</u> 11th Cir. R. 3-1.

**RESPECTFULLY RECOMMENDED** at Orlando, Florida on September 20, 2017.

THOMAS B. SMITH
United States Magistrate Judge


Copies furnished to:

    Presiding United States District Judge
    Counsel of Record
    Any Unrepresented Parties